IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **THE DIRECTV GROUP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 04-1414C** |
| | ) | **(Judge Firestone)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S ANSWER TO**
**PLAINTIFF'S SECOND AMENDED COMPLAINT,**
**AND DEFENDANT'S COUNTERCLAIM**

For its answer to the complaint, defendant United States of America admits, denies, and alleges as follows:

1. The allegations contained in paragraph 1 are plaintiff's characterization of its cause of action, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

2. The allegations contained in paragraph 2 are plaintiff's characterization of its cause of action, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

3. The allegations contained in paragraph 3 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied

**PARTIES**

4. Denies the allegations contained in paragraph 4 for lack of knowledge or information sufficient to form a belief as to their truth.

5. Admits.

## PLAINTIFF'S SUMMARY OF FACTS

### Plaintiff's Allegations Regarding Background

6. Denies the allegations contained in paragraph 6 for lack of knowledge or information sufficient to form a belief as to their truth.

7. Denies the allegations contained in paragraph 7 for lack of knowledge or information sufficient to form a belief as to their truth.

8. Denies the allegations contained in paragraph 8 for lack of knowledge or information sufficient to form a belief as to their truth.

9. Admits the allegations contained in the first sentence of paragraph 9. Denies the allegations contained in the second and third sentences of paragraph 9 for lack of knowledge or information sufficient to form a belief as to their truth.

10. Denies the allegations contained in paragraph 10 for lack of knowledge or information sufficient to form a belief as to their truth.

11. Denies the allegations contained in paragraph 11 for lack of knowledge or information sufficient to form a belief as to their truth.

12. Denies the allegations contained in paragraph 12 for lack of knowledge or information sufficient to form a belief as to their truth.

13. Denies the allegations contained in paragraph 13 for lack of knowledge or information sufficient to form a belief as to their truth.

14. Denies the allegations contained in paragraph 14 for lack of knowledge or information sufficient to form a belief as to their truth.

15. Denies the allegations contained in paragraph 15 for lack of knowledge or

information sufficient to form a belief as to their truth.

16. Denies the allegations contained in paragraph 16 for lack of knowledge or information sufficient to form a belief as to their truth.

**Plaintiff's Allegations**
**Regarding Transfer of the Defense Segment**

17. Denies the allegations contained in paragraph 17 for lack of knowledge or information sufficient to form a belief as to their truth.

18. Denies the allegations contained in paragraph 18 for lack of knowledge or information sufficient to form a belief as to their truth.

19. Denies the allegations contained in paragraph 19 for lack of knowledge or information sufficient to form a belief as to their truth.

**Plaintiff's Allegations**
**Regarding Transfer of the Satellite Segment**

20. Denies the allegations contained in paragraph 20 for lack of knowledge or information sufficient to form a belief as to their truth.

21. Denies the allegations contained in paragraph 21 for lack of knowledge or information sufficient to form a belief as to their truth.

22. Denies the allegations contained in paragraph 22 for lack of knowledge or information sufficient to form a belief as to their truth.

**Plaintiff's Allegations**
**Regarding Cost Accounting Standards**

23. The allegations contained in paragraph 23 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

24. The allegations contained in paragraph 24 are conclusions of law, to which no

response is required; to the extent that they may be deemed allegations of fact, they are denied.

25. The allegations contained in paragraph 25 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

26. The allegations contained in paragraph 26 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

27. The allegations contained in paragraph 27 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

**Plaintiff's Allegations Regarding CAS 413**

28. The allegations contained in the first sentence of paragraph 28 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied. Admits the allegations contained in the second sentence of paragraph 28 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in paragraph 28.

29. The allegations contained in the first sentence of paragraph 29 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied. Admits the allegations contained in the second sentence of paragraph 29 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in paragraph 29.

30. The allegations contained in the first sentence of paragraph 30 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied. Admits the allegations contained in the second sentence of paragraph 30 to the extent supported by the document referred to, which is the best evidence of its contents, and

otherwise denies the remaining allegations contained in paragraph 30.

31. The allegations contained in paragraph 31 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

32. The allegations contained in the first sentence of paragraph 32 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied. Denies the allegations contained in the second sentence of paragraph 32 for lack of knowledge or information sufficient to form a belief as to their truth.

33. The allegations contained in paragraph 33 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

34. The allegations contained in paragraph 34 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

35. The allegations contained in paragraph 35 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

36. The allegations contained in paragraph 36 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

37. Admits that, on or about July 23, 2004, the Defense Contract Management Agency and the Defense Contract Audit Agency jointly issued a document entitled "DCMA/DCAA Joint Guidance Implementing the Teledyne Decision on CAS 413.50(c)(12) Segment Closing Adjustments." The remaining allegations contained in paragraph 37 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

**Plaintiff's Allegations Regarding the First Final Decision**
**Relating to the Raytheon Transaction**

38. Admits the allegations contained in paragraph 38 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in paragraph 38.

**Plaintiff's Allegations**
**Regarding the Defense Segment Closing Calculation**

39. The allegations contained in paragraph 39 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

40. Admits that DIRECTV submitted to the contracting officer a document dated November 26, 2003, purporting to be a segment closing calculation for the “Defense Segment” and otherwise denies the remaining allegations contained in paragraph 40.

41. The allegations contained in paragraph 41 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

42. Admits the allegations contained in the first sentence of paragraph 42 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in the first sentence of paragraph 42. The allegations contained in the second sentence of paragraph 42 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

43. Denies the allegations contained in paragraph 43 for lack of knowledge or information sufficient to form a belief as to their truth.

44. The allegations contained in paragraph 44 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

45. Denies the allegations contained in the first sentence of paragraph 45 for lack of knowledge or information sufficient to form a belief as to their truth. The allegations contained in the second sentence of paragraph 45 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

46. Denies the allegations contained in paragraph 46 for lack of knowledge or information sufficient to form a belief as to their truth.

**Plaintiff's Allegations**
**Regarding Its First Claim**

47. Admits the allegations contained in paragraph 47 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in paragraph 47.

48. The allegations contained in paragraph 48 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

**Plaintiff's Allegations Regarding the Second Final Decision**
**Relating to the Raytheon Transaction**

49. Admits the allegations contained in paragraph 49 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in paragraph 49.

50. Admits the allegations contained in paragraph 50 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in paragraph 50.

51. Denies the first and third sentences of paragraph 51 for lack of knowledge or information sufficient to form a belief as to their truth. Admits the allegations contained in the

second sentence of paragraph 51 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in the second sentence of paragraph 51.

**Plaintiff's Allegations**
**Regarding the Satellite Segment Closing Calculation**

52. The allegations contained in paragraph 52 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

53. Admits that DIRECTV submitted to the contracting officer a document dated March 31, 2004, purporting to be a segment closing calculation for the "Satellite Segment" and otherwise denies the remaining allegations contained in paragraph 53.

54. The allegations contained in paragraph 54 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

55. Admits the allegations contained in the first sentence of paragraph 55 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in the first sentence of paragraph 55. The allegations contained in the second sentence of paragraph 55 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

56. Denies the allegations contained in paragraph 56 for lack of knowledge or information sufficient to form a belief as to their truth.

57. The allegations contained in paragraph 57 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

58. Denies the allegations contained in the first sentence of paragraph 58 for lack of knowledge or information sufficient to form a belief as to their truth. The allegations contained

in the second sentence of paragraph 58 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

59. Denies the allegations contained in paragraph 46 for lack of knowledge or information sufficient to form a belief as to their truth.

**Plaintiff's Allegations**
**Regarding Its Second Claim**

60. Admits the allegations contained in paragraph 60 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in paragraph 60.

**Plaintiff's Allegations Regarding**
**the Final Decision Relating to the Boeing Transaction**

61. Admits the allegations contained in paragraph 61 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in paragraph 61.

62. Admits the allegations contained in paragraph 62 to the extent supported by the document referred to, which is the best evidence of its contents, and otherwise denies the remaining allegations contained in paragraph 62.

**Plaintiff's Allegations Regarding This Action**

63. The allegations contained in paragraph 63 are plaintiff's characterization of its cause of action, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

**COUNT I**

64. Denied.

**COUNT II**

65. Denied.

**COUNT III**

66. Denies the allegations contained in the first sentence of paragraph 66 for lack of knowledge or information sufficient to form a belief as to their truth. The allegations contained in the second and third sentences of paragraph 66 are conclusions of law, to which no response is required; to the extent that they may be deemed allegations of fact, they are denied.

**COUNT IV**

67. Denied.

**COUNT V**

68. Denied.

**COUNT VI**

69. Denied.

**COUNT VII**

70. Denied.

**COUNT VIII**

71. Denied.

72. Denies that plaintiff is entitled to the relief set forth in the prayer for relief immediately following paragraph 71, or to any relief whatsoever.

73. Denies each and every allegation not previously admitted or otherwise qualified.

**FIRST DEFENSE**

Plaintiff's complaint should be dismissed for failure to state a claim upon which relief

may be granted.

**DEFENDANT'S COUNTERCLAIM**

**JURISDICTION**

74. This Court has jurisdiction to entertain defendant's counterclaim under 28 U.S.C. §§ 1503 and 2508, and 41 U.S.C. §§ 601 *et seq*. (the Contract Disputes Act).

**BACKGROUND**

75. On July 20, 1977, the Cost Accounting Standards Board ("CAS Board") promulgated Cost Accounting Standard 413. 42 Fed. Reg. 37191, originally codified at 4 C.F.R. § 413 (1978), and later at 48 C.F.R. § 9904.413 (1994) ("Old CAS 413"). The effective date of CAS 413 was March 10, 1978. CAS 413.80(a), 4 C.F.R. § 413.80(a) (1978). CAS 413.80(b), 4 C.F.R. § 413.80(b) (1978), required each contractor to follow CAS 413 on or after the start of the contractor's next cost accounting period beginning after the receipt of a contract to which CAS 413 was applicable.

75. On March 30, 1995, the CAS Board promulgated revisions to CAS 412 and 413, including revisions to CAS 413.50(c)(12). 60 Fed. Reg. 16534 (Mar. 30, 1995). CAS 413.63, codified at 48 C.F.R. § 9904.413-63 (1995), provided that the revised CAS 413, codified at 48 C.F.R. § 9904.413 (1995) ("New CAS 413"), was to take effect on March 30, 1995, the date of its issuance, and was to be applicable to particular contractors on or after the start of each contractor's next cost accounting period beginning after the receipt of a contract or subcontract to which the revised Standard was applicable. CAS 413.63, 48 C.F.R. § 9904.413-63 (1995).

76. No later than January 1, 1979, plaintiff and counterclaim-defendant The DIRECTV Group, Inc. ("DIRECTV"), a corporation previously known as Hughes Electronics

Corporation ("Hughes Electronics") until its name was changed to DIRECTV in 2004, which corporation is hereinafter referred as "DIRECTV/Hughes Electronics," was subject to the requirements of Old CAS 413.

77. On or about March 29, 1996, DIRECTV/Hughes Electronics was awarded Contract No. DAAH01-96-C-0180 by the Department of the Army ("the Army"). This contract was a flexibly-priced contract in the initial amount of approximately $17,543,089 for the provision of certain equipment, and contained, *inter alia*, the Cost Accounting Standards clause ("CAS clause") found at FAR § 52.230-2 (Cost Accounting Standards) (AUG 92).

78. On or about December 23, 1996, DIRECTV/Hughes Electronics was awarded Contract No. DAAH01-97-C-0093 by the Army. This contract was a firm-fixed-price contract in the initial amount of approximately $14,206,589 for the provision of certain equipment, and also contained, *inter alia*, the CAS clause.

79. As of January 1, 1997, the start of DIRECTV/Hughes Electronics' next cost accounting period beginning after the date that it received a contract or subcontract to which New CAS 413 was applicable, DIRECTV/Hughes Electronics was subject to the requirements of New CAS 413.

80. For many years, DIRECTV/Hughes Electronics was a substantial Government contractor, performing a variety of firm-fixed-price and flexibly-priced Government contracts that were subject to full CAS coverage.

**<u>DIRECTV/Hughes Electronics' Pension Plans</u>**

81. Upon information and belief, in approximately 1951, DIRECTV/Hughes Electronics established two defined benefit pension plans covering its employees (the Hughes

Bargaining Retirement Plan and the Hughes Nonbargaining Retirement Plan). Until at least 1987, DIRECTV/Hughes Electronics charged a portion of the pension costs for these plans to various flexibly-priced Government contracts, and the Government reimbursed such costs to DIRECTV/Hughes Electronics. Until at least 1987, DIRECTV/Hughes Electronics also included a portion of the pension costs for these plans in its pricing proposals for various negotiated fixed price contracts, some of which contracts it was later awarded.

82. Upon information and belief, no pension costs were charged to Government flexibly-priced contracts by DIRECTV/Hughes Electronics on or after January 1, 1997, and no pension costs were included in DIRECTV/Hughes Electronics' pricing proposals for any negotiated fixed-priced contracts that DIRECTV/Hughes Electronics was awarded on or after that date.

## The Raytheon Segment Closing Transaction

83. On or about December 17, 1997, DIRECTV/Hughes Electronics sold a segment of its business, a subsidiary corporation known as Hughes Defense Corporation, to Raytheon Company ("Raytheon").

84. Pursuant to the terms of an agreement dated that same day (December 17, 1997) between DIRECTV/Hughes Electronics and Raytheon styled "Employee Matters Agreement," DIRECTV/Hughes Electronics transferred certain pension assets and actuarial liabilities relating to the present and former employees of the segment (both retired employees and terminated vested employees) from the DIRECTV/Hughes Electronics pension plans to pension plans established by Raytheon for the benefit of the present and former DIRECTV/Hughes Electronics employees.

**Finding of CAS 413 Noncompliance**
**with Respect to the Raytheon Transaction**

85. By letter dated August 2, 2001, to Patrick T. Doyle. Controller, Corporate Vice President and Chief Accounting Officer, DIRECTV/Hughes Electronics, Donald P. Springer, Defense Corporate Executive, notified DIRECTV/Hughes Electronics of his initial finding that DIRECTV/Hughes Electronics was in noncompliance with CAS 413.50(c)(12) because it had failed to make an adjustment of previously-determined pension costs after the sale of the Hughes Defense Corporation segment to Raytheon, as required by CAS 413.50(c)(12).

86. By letter dated October 1, 2001, Mr. Doyle responded to Mr. Springer's August 2, 2001 initial finding of noncompliance, and contended that no noncompliance had occurred.

87. By letter dated September 30, 2003, Mr. Springer issued a final decision finding that DIRECTV/Hughes Electronics was in noncompliance with CAS 413.50(c)(12) with respect to the Raytheon transaction, and requested that DIRECTV/Hughes Electronics calculate the required segment-closing adjustment relating to the Raytheon transaction and submit it within 60 days. Mr. Springer noted that if DIRECTV/Hughes Electronics failed to submit the requested segment-closing adjustment calculation, the Government would perform its own calculation of the cost impact of DIRECTV/Hughes Electronics' noncompliance with CAS 413.50(c)(12), and would issue a Contracting Officer's Final Decision and Demand for Payment in the amount so calculated.

88. By letter dated November 26, 2003, Mr. Doyle submitted a purported claim by DIRECTV/Hughes Electronics for an interpretation of contract terms under the Contract Disputes Act of 1978 ("CDA") that sought, *inter alia*, a determination that DIRECTV/Hughes Electronics had no liability to the Government for any payment or adjustment under CAS 413

relating to the Raytheon transaction. This submission was supported by a letter dated November 26, 2003 from Alexander F. Wiles, Esquire, of the law firm of Irell & Manella LLP, and Alan C. Brown, Esq., of the law firm of Duane Morris LLP, counsel to DIRECTV/Hughes Electronics, and a letter dated November 24, 2003 to Mr. Wiles from John B. McQuade, F.S.A., Pine Cliff Consulting Inc., an actuarial consultant to DIRECTV/Hughes Electronics. The supporting documentation contained a purported segment-closing calculation allegedly prepared under the provisions of CAS 413 as originally promulgated in 1978, rather than as amended in 1995.

89. By letter dated December 12, 2003, Mr. Springer issued a Contracting Officer's Final Decision and Demand for Payment regarding the Raytheon transaction. In his Final Decision, Mr. Springer determined that DIRECTV/Hughes Electronics was in noncompliance with CAS 413.50(c)(12) with respect to the Raytheon transaction, because it had failed to submit a proper segment-closing adjustment calculation, and made a demand for payment of $68,695,891 based upon the Government's "rough order of magnitude cost impact analysis."

**<u>The Satellite Segment Closing Transaction</u>**

90. On or about October 6, 2000, DIRECTV/Hughes Electronics sold a segment of its business known as the Satellite Segment to the Boeing Company ("Boeing"). The Satellite Segment was in turn composed of units or divisions known as of October 6, 2000, as Hughes Space and Communications Company, Hughes Electron Dynamics, Spectrolab, Inc, and Hughes Research Lab, LLC.

91. Upon information and belief, in connection with its sale of the Satellite Segment to Boeing, DIRECTV/Hughes Electronics transferred certain pension assets and actuarial liabilities relating to the present and former employees of the segment (both retired employees

and terminated vested employees) from the DIRECTV/Hughes Electronics pension plans to pension plans maintained by Boeing.

**Finding of CAS 413 Noncompliance**
**with Respect to the Boeing Transaction**

92. By letter dated October 6, 2003, to Denise A. McLeod, Donald P. Springer, Defense Corporate Executive, notified DIRECTV/Hughes Electronics of his initial finding that DIRECTV/Hughes Electronics was in noncompliance with CAS 413.50(c)(12) because it had failed to make an adjustment of previously-determined pension costs after the sale of the Hughes Satellite segment to Boeing, as required by CAS 413.50(c)(12).

93. By letter dated March 21, 2004, Mr. Patrick T. Doyle, Corporate Senior Vice President, Controller, and Treasurer for DIRECTV/Hughes Electronics responded to Mr. Springer's October 6, 2003 letter. With his letter, Mr. Doyle submitted a proposed segment closing calculation, and requested a finding that DIRECTV/Hughes Electronics was in full compliance with CAS 413, and that it had no liability in connection with the Boeing transaction.

94. By letter dated June 21, 2004, Mr. Doyle submitted a purported claim by DIRECTV/Hughes Electronics for an interpretation of contract terms under the Contract Disputes Act of 1978 that sought, *inter alia*, a determination that DIRECTV/Hughes Electronics had no liability to the Government for any payment or adjustment under CAS 413 relating to the Boeing transaction.

95. By letter dated June 14, 2005, Mr. Springer issued a Contracting Officer's Final Decision and Demand for Payment regarding the Boeing transaction. In his Final Decision, Mr. Springer determined that DIRECTV/Hughes Electronics was in noncompliance with CAS 413.50(c)(12) with respect to the Boeing transaction, because it had failed to submit a proper

segment-closing adjustment calculation, and made a demand for payment of $12,197,704 based upon the Government's "rough order of magnitude calculation."

**COUNT I**
**(Government Claim for a Segment-Closing Adjustment under**
**CAS 413.50(c)(12) relating to the Raytheon Transaction)**

96. Defendant repeats and incorporates herein by reference the allegations contained in paragraphs 74 through 94 set forth above as if set forth in full at this point.

97. At the time of its sale to Raytheon, Hughes Defense Corporation was a "segment" of DIRECTV/Hughes Electronics' business as defined in CAS 413.30(a)(11), 48 C.F.R. § 9904.413-30(a)(11) (1994), and in CAS 413.30(a)(19), 48 C.F.R. § 9904.413-50(a)(19) (1995).

98. DIRECTV/Hughes Electronics' sale of its Hughes Defense Corporation segment to Raytheon constituted a segment closing under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994), and under CAS 413.30(a)(20), 48 C.F.R. § 9904.413-30(a)(20) (1995).

99. Because, upon information and belief, no pension costs were either charged to any Government flexibly-priced contracts that were entered into on or after January 1, 1997, or included in DIRECTV/Hughes Electronics' pricing proposals for any negotiated Government firm-fixed-price contracts entered into on or after that date, the entire pension surplus of the Hughes Defense Corporation segment is attributable to pension costs allocated to contracts that were entered into under, and subject to, Old CAS 413. As a result, DIRECTV/Hughes Electronics is entitled to an equitable adjustment under FAR § 52.230-2, 48 C.F.R. § 52.230-2 (the CAS clause) to the extent that it would be required to pay more under New CAS 413 than under Old CAS 413.

100. Under Old CAS 413, specifically, CAS 413.50(c)(12), 48 C.F.R. § 9904.413-

50(c)(12) (1994), DIRECTV/Hughes Electronics was required to determine the difference, as of the segment closing date, between the actuarial liability for the Hughes Defense Corporation segment and the market value of the assets allocated to that segment (the "pension surplus"), and to pay to the Government the Government's share of the pension surplus.

101. Under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994), the Government's share of the closed segment's pension surplus is equal to the portion of the surplus that is attributable to pension contributions that were allocated to DIRECTV/Hughes Electronics' government flexibly-priced contracts that were subject to CAS 413 because they were entered into after January 1, 1979, the date upon which DIRECTV/Hughes Electronics was required to follow CAS 413.

102. The Government's share of the Hughes Defense Corporation segment's pension surplus under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994), relating to the Raytheon transaction is an amount that will be established at the trial of this action.

103. Pursuant to CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994), DIRECTV/Hughes Electronics is liable to the Government for the Government's share of the Hughes Defense Corporation segment's pension surplus, plus interest for DIRECTV/Hughes Electronics' noncompliance with CAS 413 from December 17, 1997 (the date of segment closing) to the date of payment, in an amount that will be established at the trial of this action.

104. DIRECTV/Hughes Electronics has not paid to the Government any part of the amounts that it owes under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994), relating to the Raytheon transaction.

105. DIRECTV/Hughes Electronics is in noncompliance with CAS 413.50(c)(12), 48

C.F.R. § 9904.413-50(c)(12) (1994), with respect to the Raytheon transaction, because it has never made the segment-closing adjustment of previously-determined pension costs required by that provision.

**COUNT II**
**(Government Claim for a Segment-Closing Adjustment under**
**CAS 413.50(c)(12) relating to the Boeing Transaction)**

106. Defendant repeats and incorporates herein by reference the allegations contained in paragraphs 74 through 103 set forth above as if set forth in full at this point.

107. At the time of its sale to Boeing, the DIRECTV/Hughes Electronics' Satellite Segment was a "segment" of DIRECTV/Hughes Electronics' business as defined in CAS 413.30(a)(11), 48 C.F.R. § 9904.413-30(a)(11) (1994), and in CAS 413.30(a)(19), 48 C.F.R. § 9904.413-50(a)(19) (1995).

108. DIRECTV/Hughes Electronics' sale of its Satellite Segment to Boeing constituted a segment closing under CAS 413, 48 C.F.R. § 9904.413 (1994), and under CAS 413.30(a)(20), 48 C.F.R. § 9904.413-30(a)(20) (1995).

109. Because, upon information and belief, no pension costs were either charged to any Government flexibly-priced contracts that were entered into on or after January 1, 1997, or included in DIRECTV/Hughes Electronics' pricing proposals for any negotiated Government firm-fixed-price contracts entered into on or after that date, the entire pension surplus of the Satellite Segment is attributable to pension costs allocated to contracts that were entered into, and subject to, Old CAS 413. As a result, DIRECTV/Hughes Electronics is entitled to an equitable adjustment under FAR § 52.230-2, 48 C.F.R. § 52.230-2 (the CAS clause) to the extent that it would be required to pay more under New CAS 413 than under Old CAS 413.

110. Under Old CAS 413, specifically, under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994), DIRECTV/Hughes Electronics was required to determine the difference, as of the segment closing date, between the actuarial liability for the Satellite Segment and the market value of the assets allocated to that segment (the "pension surplus"), and to pay to the Government the Government's share of the closed segment's pension surplus.

111. Under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994), the Government's share of the closed segment's pension surplus is equal to the portion of the surplus that is attributable to pension contributions that were allocated to DIRECTV/Hughes Electronics' government flexibly-priced contracts that were subject to CAS 413 because they were entered into after January 1, 1979, the date upon which DIRECTV/Hughes Electronics was required to follow CAS 413.

112. The Government's share of the Satellite Segment's pension surplus under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994), relating to the Boeing transaction is an amount that will be established at the trial of this action.

113. Pursuant to CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994), DIRECTV/Hughes Electronics is liable to the Government for the Government's share of the Satellite Segment's pension surplus, plus interest for DIRECTV/Hughes Electronics' noncompliance with CAS 413 from October 6, 2000 (the date of segment closing) to the date of payment, in an amount that will be established at the trial of this action.

114. DIRECTV/Hughes Electronics has not paid to the Government any part of the amounts that it owes under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994), relating to the Boeing transaction.

115. DIRECTV/Hughes Electronics is in noncompliance with CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994), with respect to the Boeing transaction, because it has never made the segment-closing adjustment of previously-determined pension costs required by that provision.

WHEREFORE, defendant respectfully requests that plaintiff's complaint be dismissed with prejudice, that judgment be entered in defendant's favor against plaintiff on defendant's counterclaim in an amount to be determined at the trial of this action, plus applicable interest and costs, and that defendant be granted such other and further relief as the Court may deem just and proper.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ C. Coleman Bird
C. COLEMAN BIRD
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: 202.307.0453
Facsimile: 202.514.7965

Attorney for Defendant United States of America

OF COUNSEL:

WILLIAM MANLEY
Trial Attorney
Defense Contract Management Agency
495 Summer Street
Boston, MA 02210

Dated: July 28, 2005

**CERTIFICATE OF FILING**

I hereby certify that on the 28th day of July, 2005, a copy of the foregoing Defendant's Answer to Plaintiff's Second Amended Complaint, and Defendant's Counterclaim was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ C. Coleman Bird