**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THE DIRECTV GROUP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 04-1414C** |
| | ) | **(Judge Firestone)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to Appendix A, ¶ 4, of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff, The DirecTV Group, Inc. ("DirecTV"), and defendant, the United States of America (the "Government" or "defendant") (referred to collectively as "the parties"), respectfully submit the following Joint Preliminary Status Report ("JPSR"):

**Preliminary Statement**

As the Court is aware, the parties have been discussing the possibility of attempting to resolve this case by agreement. The principal issue that divides them relates to the proper allocation of pension assets to the transferred segments. The parties have agreed to attempt to reach agreement upon this issue through an informal process of data exchange and inquiry at the technical level. This process will require the parties' technical experts to review and analyze a considerable amount of actuarial data and information for a period of years. Plaintiff anticipates that its actuaries will complete an analysis of this issue in approximately 45 days, and will provide to the Government the results of that analysis at that time. Plaintiff will also make its actuarial representative(s) available to the Government's actuarial expert(s) for discussions regarding the data, methodology, and assumptions that plaintiff utilized. The parties anticipate

that, after reviewing plaintiff's analysis, the Government's experts may request additional data in order to test, confirm, and verify that analysis and that plaintiff will provide the requested data if it is reasonably available. The parties expect that, following the Government review of plaintiff's analysis, they will pursue the possibility of resolving this case.

In order to allow a reasonable opportunity for the parties to pursue their discussions in this process and to explore the possibility of resolving this case by agreement, the parties jointly and respectfully request that the Court stay all proceedings and deadlines in this case for a period of five months (through and including March 27, 2006). The parties also respectfully suggest that, if the Court is disposed to grant the requested stay, the Court may wish to consider directing them (i) to file a joint status report every 60 days during the period of the stay regarding the progress of their efforts to resolve this case by agreement, and (ii) if the parties have not succeeded in resolving the case by March 27, 2006, to file a further joint status report on or before April 3, 2006 proposing further proceedings in this case.

## I. JURISDICTION

### A. Plaintiff's Statement

DirecTV's position is that the Court has jurisdiction over all issues raised by DirecTV's complaint as amended pursuant to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 609(a)(1), and 28 U.S.C. § 1491(a)(1) and (2). DirecTV does not contest the Court's jurisdiction over the Government's counterclaim.

### B. Government's Statement

The Government has identified no reason to question the subject matter jurisdiction of this Court and believes that this Court possesses jurisdiction over the Government's

counterclaim.

## II. CONSOLIDATION

The parties agree that this case should not be consolidated with any other case currently pending before the Court.

## III. BIFURCATION OF LIABILITY AND DAMAGES

At present, the parties agree that, if the case proceeds to trial, the issues of liability and damages should be tried together.

## IV. DEFERRAL OF PROCEEDINGS

For the reasons described in the Preliminary Statement, the parties respectfully request that the Court stay proceedings in this case for a period of five months (through and including March 27, 2006) to give the parties the opportunity to explore the possibility of resolving this case by agreement.

## V. REMAND OR SUSPENSION

For the reasons previously stated, the parties request a limited stay of proceedings (*see* Part IV above). Apart from that request, neither party currently seeks remand or suspension.

## VI. JOINDER

Neither party intends to join additional parties at this time.

## VII. DISPOSITIVE MOTIONS

### A. Plaintiff's Statement

Plaintiff intends to file motions to summarily adjudicate the following issues:

1. Whether the 1978 CAS or the 1995 CAS governs the dispute in this case over whether DirecTV is liable for segment closing adjustments upon the sales of its defense and

satellite businesses to Raytheon and Boeing, respectively?

2. Whether the transactions between DirecTV and Raytheon and Boeing respectively constituted "segment closings" under CAS 413?

3. Whether DirecTV has no liability for any segment closing adjustments arising from the sales of its defense and satellite businesses to Raytheon and Boeing, respectively, because it properly allocated actuarial liabilities and assets between the segments to be transferred and the remaining segments as of the proper dates under the applicable CAS?

4. Whether DirecTV has no liability for segment closing adjustments arising from the sales of its defense and satellite businesses to Raytheon and Boeing, respectively, because, among other reasons, (1) DirecTV transferred billions of dollars in surplus pension plan assets to Raytheon and Boeing, (2) the amounts transferred vastly exceeded the Government's share of the surpluses calculated pursuant to the *Teledyne* formula, (3) those transfers have already resulted in the Government having received a reduction in pension costs far greater than the segment closing adjustment that would have been due had DirecTV transferred no surplus pension plan assets to Raytheon or Boeing or (4) any noncompliance with CAS 413 did not result in any increased costs to the Government.

**B. <u>Government's Statement</u>**

The Government believes that, if the parties' efforts to resolve this case by agreement are not successful, certain legal issues may be appropriate for resolution as a matter of law by motion for partial summary judgment. These issues relate to DirecTV's contentions (1) that, because it allegedly transferred to the buyer of each segment an amount of the segment's pension surplus that was greater than the amount of the Government's share under CAS 413.50(c)(12) of

that segment's pension surplus, it had satisfied and fully discharged its obligation to make a segment-closing adjustment under CAS 413.50(c)(12); and, if that argument is not successful, (2) that, by reason of the same alleged transfer of pension surplus, any non-compliance with the requirements of CAS 413.50(c)(12) did not result in any increased costs to the Government, and, therefore, the Government is not entitled to any recovery. *See* Issues Nos. VIII.B.7-8 below.

## VIII. RELEVANT FACTUAL AND LEGAL ISSUES

### A. Plaintiff's Statement

Effective December 17, 1997, DirecTV transferred its defense business segment to Raytheon Company. As part of that transaction, DirecTV transferred to Raytheon all pension fund assets and liabilities pertaining to its defense business units. In all, DirecTV transferred approximately 75% of the total plan liabilities and assets of its pension plans, amounting to $3,310,028,559 in liabilities, $5,771,415,313 in assets and thus $2,461,386.754 in surplus pension assets. To arrive at the amount of assets to be transferred, DirecTV determined what percentage of the overall liabilities of its pension plans were being transferred to Raytheon as of the date of the transaction and transferred to Raytheon the same percentage of the assets of those plans. The Government contends that DirecTV erred in using this methodology and as a consequence owes the Government a direct payment of $44,454,849 plus interest as a segment closing adjustment. DirecTV disagrees. DirecTV believes that the transaction between it and Raytheon did not constitute a segment closing under the applicable CAS. Even if the transaction was a segment closing, DirecTV contends that it was not required to make a segment closing adjustment payment to the Government because DirecTV transferred assets to Raytheon in accordance with a calculation methodology permitted by the applicable CAS. Moreover, even if

DirecTV erred in its calculation methodology, DirecTV's error has resulted in no excess costs to the Government, and thus DirecTV owes no segment closing adjustment.

Effective October 6, 2000, DirecTV transferred its satellite business segment to Boeing Company. Again, DirecTV transferred the pension fund assets and liabilities attributable to the transferred segment. DirecTV used the same methodology to determine these amounts as it had done with the Raytheon transaction. That methodology resulted in a transfer to Boeing of approximately 79% of the DirecTV plans total assets and liabilities; this time DirecTV transferred $1,037,344,156 in liabilities and $1,840,854,977 in assets. Boeing thus received surplus pension assets of $803,510,821. The Government makes the same contentions with regard to the Boeing transaction that it makes with regard to the Raytheon transaction and seeks a direct payment from DirecTV of an additional $12,197,704 plus interest as a segment closing adjustment. For the same reasons as set forth above, DirecTV contends that it owes no money to the Government.

**B. <u>Government's Statement</u>**

At this point, the Government believes that the relevant factual and legal issues are as follows:

1. Whether, when DirecTV sold its Defense Segment and its Satellite Segment, each constituted a "segment" under CAS 413.30(a)(11), 48 C.F.R. § 9904.413-30(a)(11) (1994)?

2. Whether DirecTV's sale of each of these segments constituted a "segment closing" under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994)?

3. Whether DirecTV was required under CAS 413.50(c)(2) or 413.50(c)(3), 48 C.F.R. §§ 9904.413-50(c)(2) or 9904.413.50(c)(3) (1994), to calculate pension cost separately:

a. for the Defense Segment for any year prior to 1997, the year that the Defense Segment was closed, or

b. for the Satellite Segment for any year prior to 2000, the year that the Satellite Segment was closed?

4. If DirecTV was required under CAS 413.50(c)(2) or 413.50(c)(3), 48 C.F.R. §§ 9904.413-50(c)(2) or 9904.413.50(c)(3) (1994), to calculate pension cost separately for either segment before the year that such segment closed, but failed to do so, can its CAS 413 non-compliance properly be considered in making the segment-closing adjustment required by CAS 413.50(c)(12)?

5. What is the proper allocation of pension assets to each segment as of the date each segment was closed, under CAS 413.50(c)(12) and 413.50(c)(5), 48 C.F.R. §§ 9904.413-50(c)(12), and 9904.413-50(c)(5) (1994)? More specifically, are the "necessary data" (regarding the amount of funds contributed by, or on behalf of each segment, the amount of income received on such funds, and the amount of benefits and expenses paid from such funds) "readily determinable" for purposes of CAS 413.50(c)(5)(i), 48 C.F.R. § 9904.413-50(c)(5)(i) (1994), so as to permit allocation of pension assets to be made under that provision, or is the allocation of pension assets required to be made under the alternative *pro rata* methodology provided by CAS 413.50(c)(5)(ii), 48 C.F.R. § 9904.413-50(c)(5)(ii) (1994)?

6. As to each segment closing, what is the amount of segment-closing adjustment that is required under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994)? Specifically:

a. What was the market value of the pension assets properly allocable to each segment as of the date of the segment closing? (*See* issues nos. B.3-B.5 above.)

b. What was the amount of each segment's actuarial liability as of the date of the segment closing?

c. What was the difference between the market value of each segment's properly allocated pension assets and its actuarial liability as of the date of the segment closing, *i.e.*, what was each segment's pension surplus?

d. What portion of each segment's pension surplus as of the date of segment closing is properly attributable to pension contributions that were allocated to flexibly-priced Government contracts that were entered into after DirecTV was required to comply with Old CAS 413.50(c)(12)?

7. If DirecTV transferred to the buyer of each segment an amount of the segment's total pension surplus as of the date of the segment closing that was greater than the Government's share under CAS 413.50(c)(12) of the segment's total pension surplus, did DirecTV by making that transfer satisfy and discharge its obligation to make a segment-closing adjustment under CAS 413.50(c)(12)?

8. If the answer to the previous issue (issue no. B.7) is in the negative, is the Government entitled to recover its full share under CAS 413.50(c)(12) of the portion that DirecTV retained of the pension surplus of each segment, without regard to DirecTV's transfer of the remainder of that segment's pension surplus to the buyer of the segment, or is the amount of the Government's recovery under CAS 413.50(c)(12) of the surplus that DirecTV retained, required to be reduced or eliminated to the extent that DirecTV's transfer of the segment's remaining surplus to the buyer of each segment resulted in the buyer's charging lower amounts of pension cost to the Government in later years than the buyer otherwise would have?

9. What is the amount of interest that DirecTV owes to the Government on the amounts owed to the Government as segment-closing adjustments under CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50(c)(12) (1994)?

## IX. <u>LIKELIHOOD OF SETTLEMENT</u>

See discussion above in Preliminary Statement and Part IV.

## X. <u>TRIAL</u>

Neither party requests expedited trial scheduling at this time. Both parties anticipate proceeding to trial unless the case is earlier resolved by settlement or dispositive motion.

## XI. <u>ELECTRONIC CASE MANAGEMENT NEEDS</u>

The parties are not currently aware of any special issues regarding electronic case management needs.

## XII. <u>OTHER INFORMATION</u>

The parties are not aware of any information of which the Court should be aware at this time.

## XIII. <u>PROPOSED DISCOVERY PLAN</u>

As noted above, the parties propose that, if their efforts to resolve this case by agreement do not prove successful, they would then submit for the Court's consideration a joint status report recommending further proceedings in this case. That joint status report would contain the parties' proposed discovery plan.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ C. Coleman Bird
C. COLEMAN BIRD
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: 202.307.0453
Facsimile: 202.514.7965

Attorneys for Defendant United States of America

OF COUNSEL:

William Manley
Trial Attorney
Defense Contract Management Agency
495 Summer Street
Boston, MA 02210

s/ Alexander F. Wiles
ALEXANDER F. WILES
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010
(310) 203-7199 (fax)

OF COUNSEL:

ALAN C. BROWN
Duane Morris LLP
1667 K Street, N.W., Suite 700
Washington, DC 20006-1608

Dated: October 27, 2005

**CERTIFICATE OF FILING**

I hereby certify that on the 27th day of October, 2005, a copy of the foregoing Joint Preliminary Status Report was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ C. Coleman Bird