**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THE DIRECTV GROUP, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 04-1414C** |
| | ) | **(Judge Firestone)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S STATUS REPORT**

Defendant, the United States, submits this status report in response to the Court's Order dated November 30, 2007. The Court issued that order after conducting a telephone status conference earlier that same day. In its order, the Court directed the parties to file a joint status report by January 7, 2008, providing a schedule for the completion of discovery no later than April 30, 2008, and the filing of plaintiff's summary judgment motions no later than June 2, 2008. Order dated November 30, 2007. Defendant is submitting this Status Report on its own behalf, because the parties have discussed and been unable to agree upon the language of a joint status report.

When the parties discussed a possible schedule, it became clear that the parties had differing views regarding the scope of the discovery that the Court intended the parties to accomplish by April 30, 2008. Although the matter was not entirely clear, we did not understand that the Court had directed the parties to complete within four months (by April 30, 2008) all factual and expert witness discovery upon all issues in this case. This is a case of considerable complexity that involves not one but two separate multi-million dollar segment closings. Based

upon the discussion at the November 30 telephone status conference (which the Court's docket does not indicate was transcribed), we believed that the Court may have intended that the parties complete only the discovery necessary to resolve the two summary judgment motions that plaintiff DIRECTV Group, Inc. ("DIRECTV") stated that it intended to file.

DIRECTV's planned summary judgment motions related to two separate issues. The first issue is the surplus transfer issue – DIRECTV's legal argument that a contractor can avoid making any CAS 413.50(c)(12) segment closing adjustment with respect to pension surplus that it retains if it transfers to the buyer pension assets and liabilities (however measured) that exceed the amount of the Government's share of the closed segment's entire pension surplus. The second issue is the segment accounting issue – DIRECTV's argument that it was not required to use segment accounting, or, in the alternative, that a contractor that had used composite accounting rather than segment accounting to account for the pension costs allocable to a segment even though segment accounting was legally required under CAS 413, is nonetheless free, when it closes the segment in question, to determine the assets attributable to the closed segment for purposes of the CAS 413.50(c)(12) segment-closing calculation without regard to whether it had previously been required to use segment accounting for the segment. In DIRECTV's view, the Court intended to require completion of all discovery upon all issues in the case by April 30, 2008.

If we have misunderstood the Court's intent, we regret our error. And, if the Court did intend to require the completion of all discovery in this case within four months, we would ask the Court to consider (i) the virtual impossibility of the Government's completing all the discovery (fact discovery and expert discovery) that it would reasonably need on all issues

within four months, (ii) the substantial prejudice to the Government that would result from the imposition of such a requirement, and (iii) DIRECTV's failure to demonstrate any need for the precipitate haste it demands, and, upon such consideration, grant the necessary time to accomplish these tasks. For the reasons set forth below, not less than eight months (through and including September 1, 2008) would be required to complete all discovery in this case. If the Court would prefer that we file a formal motion for reconsideration on this point, we would be glad to do so promptly.

**1. The Government's Discovery Needs**

As the Court is aware, this case was stayed for over two years, from October 28, 2005 to November 15, 2007, at the parties' joint request so that the parties could attempt to settle the case. *See* Order dated October 28, 2005, and later orders. On November 14, 2007, DIRECTV filed "The DIRECTV Group's Statement Re Case Status," in which it asked the Court to lift the stay. Because the Government was not able to take any discovery during the period of the stay, the Government has had no opportunity to take any discovery in this case, and has not taken any.

As noted above, this is a major case, involving two separate segment closings. If the Court were addressing the question of discovery deadlines in a case of this complexity at the outset of the case, we believe that it would be most unlikely that the Court would require the Government to complete all of its discovery in four months. The Government should not be prejudiced by an onerous, and virtually impossible, discovery deadline merely because we made an effort in good faith to settle this case, an effort that was ultimately not successful. We do not believe that the Court anticipated or intended such an unfair result.

As the Court is aware, in order to perform the CAS 413 segment-closing calculation for

the two segments, the Court must determine (i) the market value of the assets allocable to each of the closed segments as of the date of segment closing; (ii) the actuarial liability allocable to each segment as of that same date; and (iii) the Government's share of any resulting pension surplus or deficit. DIRECTV accounted for pension costs for the two segments on the composite basis. As a result, in order to perform the CAS 413 segment-closing calculation, it will be necessary to determine, for each segment and for each of the two pension plans involved, what part of the total assets and actuarial liabilities as of the date of segment closing was properly allocable to the segment. *See* CAS 413.50(c)(12), 48 C.F.R. § 9904.413-50c)(12) ("In computing the market value of assets for the segment, if the contractor has not already allocated assets to the segment, such an allocation shall be made in accordance with the requirements of [CAS 413.50(c)(5)(i) and CAS 413.50(c)(5)(ii)].")

An additional complexity involved in this case is that the Government believes that discovery will demonstrate that, as far back as 1994 and perhaps earlier, DIRECTV was required by CAS 413.50(c)(2), 48 C.F.R. § 9904.413-50(c)(2), to use segment accounting rather than composite accounting. If DIRECTV had done so, it would have made an initial allocation of assets to each segment as of the date that segment accounting commenced, and would have accounted for the segment's assets each year. If it had done so, determining the assets allocable to each segment as of the date of segment closing would not be a complicated matter. DIRECTV did not perform segment accounting, however. Instead, it used composite accounting. The discovery that the Government would need in order to establish that DIRECTV was required to use segment accounting would relate to possible differences between the segment and the plan as a whole in terms of level of benefits, eligibility for benefits, or age distribution, and in terms of

the appropriate actuarial assumptions to use relating to termination, retirement age, or salary scale. *See* CAS 413.50(c)(2), 48 C.F.R. § 9904.413-50(c)(2). This alone would be voluminous and extensive discovery.

In addition, it will be necessary to explore exactly what data needed for the CAS 413 segment-closing calculation for each segment (in terms of pension assets, liabilities, allocation of such assets and liabilities to the closed segments, the Government's share of pension costs allocated to this segment (broken down as between Government flexibly-priced and firm-fixed-price contracts) may be available. This will include discovery of DIRECTV and likely of third parties that may have some of these data. The time span of this discovery would extend for decades, back to the original inception of the pension plans at issue (which we understand were established in the 1950s). It will almost certainly be necessary for the Government to engage an expert to review the data to be obtained in discovery and express an opinion upon the proper calculation of the CAS 413 segment closing adjustment.

Significantly, the prejudicial impact of a truncated, four-month discovery deadline in this case would fall not upon both parties, but almost exclusively upon the Government and only upon the Government. DIRECTV has already chosen its testifying expert – Mr. John B. McQuade, a consulting actuary. He has spent years reviewing these transactions. He has submitted a detailed analysis, which Government auditors and actuaries have reviewed, at least in part. In that analysis, Mr. McQuade expressed his opinions, based upon various approximations, estimates, and what was claimed to be the best data available, regarding the amount of each closed segment's pension assets and liabilities as of the date of segment closing, the Government's share of each segment's surplus, and also the amount of pension assets and

liabilities that DIRECTV transferred to the buyer in each transaction. Significantly, in his analysis, Mr. McQuade used no actual, contemporaneous data regarding what the assets of either of the closed segments had been at the time of segment closing (December 17, 1997 for the Defense segment, and October 6, 2000 for the Satellite segment). Instead, to derive these asset values, he began with actuarial liability data as of 2000 for the part of DIRECTV that was left *after* the two segment closings in question, and worked back to 1993, allocated assets based upon liabilities as of 1993, and then arrived at the assets of each segment by "rolling forward" from the 1993 estimated assets using further estimates. It is this analysis that the Government was reviewing.

The Government will require considerable discovery regarding the values, amounts, opinions, and conclusions in Mr. McQuade's analysis. Each of these values (each segment's assets and liabilities, the Government's share of the resulting surplus, and the amount of assets and liabilities transferred, and the basis therefor in subsidiary values, estimates, approximations, *etc*.) is properly the subject of discovery. It is neither fair nor reasonable to require the Government – in four months – to conduct the discovery (fact and expert) it will need to determine the validity of DIRECTV's expert's analysis while, at the same time, locating a testifying expert who can prepare and submit an expert report that would necessarily rely in significant part upon information simultaneously being developed in discovery.

DIRECTV could have framed its surplus transfer motion as the other contractors that have made this argument have done (in *General Electric Co. v. United States,* No. 99-172C, and in *Unisys Corp. v. United States,* No. 05-281C), in the form of a legal argument to establish the legal proposition that *if* the contractor transferred an amount of surplus (however calculated) that

was greater than the Government's calculated share of the closed segment's entire pension surplus, then the contractor would have no obligation to make a segment closing adjustment upon the amount of surplus that it retained and did not transfer. If DIRECTV were prepared to make such a motion, its motion could be addressed properly as a question of law, without the Court's ever having to determine whether there was a genuine issue of material fact regarding the exact amount of the assets and liabilities properly allocable to each of the closed segments, the Government's share of the segment's surplus, and the amount of the Government's alleged future benefit from the transfer to the buyer. But, if DIRECTV refuses to cast its motion in the same way that the other contractors have, necessarily the Court would have to determine if there were a genuine issue of material fact regarding these specific amounts.

The Government is entitled to a reasonable opportunity to take the discovery it needs in order to have a fair chance to controvert DIRECTV's anticipated proposed findings of uncontroverted fact on the precise amounts of assets and liabilities involved. Four months is plainly insufficient for this purpose. Indeed, not less than eight months would reasonably be required.

**2. The Government's Proposed Schedule**

Four months is a reasonable period of time within which to take and complete the discovery needed to address DIRECTV's summary judgment motions regarding the surplus transfer issue and the segment accounting issue, *provided* that DIRECTV's surplus transfer motion is addressed as a question of law, and does not depend upon allegedly uncontroverted facts regarding the exact amounts of pension assets and liabilities properly allocable to each of the two closed segments at the time of segment closing, the amount of pension assets and

liabilities transferred to each buyer in connection with each transaction, and the Government's participation percentage. It is those precise amounts that the Government would need discovery to confirm or controvert. It would be manifestly unfair and prejudicial to require the Government to respond to proposed findings asserting specific dollar amounts for these figures, without affording a reasonable opportunity to take discovery to determine their validity. As noted, four months is not a reasonable opportunity.

Accordingly, we propose the following discovery and briefing schedule relating to plaintiff's proposed summary judgment motions (on the assumption that DIRECTV's surplus transfer motion would be limited to the legal question). This schedule is similar, but not identical, to the schedule that we proposed to DIRECTV's counsel during the January 3, 2008 telephone conference call regarding the joint status report.[1]

**A. <u>Discovery Schedule</u>**

| | |
|---|---|
| January 22, 2008 | Parties to serve any written discovery (interrogatories, document production requests, and requests for admission) |
| March 15, 2008 | Depositions may commence |
| March 15, 2008 | Plaintiff to serve any expert witness disclosures and responses to any written expert witness discovery requests |
| April 8, 2008 | Defendant to serve any expert witness disclosures and responses to any written expert witness discovery requests |

---

[1] Although during their January 3, 2008 conference call the parties were unable to agree upon a discovery schedule, there seemed to be the possibility of an agreement regarding the Government's proposed briefing schedule. DIRECTV's counsel undertook to consider the Government's proposed briefing schedule and advise Government counsel by e-mail later that day whether DIRECTV agreed to the proposed briefing schedule. We have not received any further communication from DIRECTV's counsel indicating DIRECTV's position upon the Government's proposed briefing schedule.

| | |
|---|---|
| April 30, 2008 | Completion of discovery (fact and expert) |

**B. Briefing Schedule**

| | |
|---|---|
| June 2, 2008 | Plaintiff to serve its summary judgment motions relating to the surplus transfer issue and segment accounting issue |
| July 25, 2008 | Defendant to serve its oppositions and any cross-motions in response to plaintiff's motions |
| September 5, 2008 | Plaintiff to serve its replies in support of its summary judgment motions and its oppositions to any cross-motions filed by defendant |
| September 26, 2008 | Defendant to serve its replies in support of any cross-motions |

## Conclusion

For the foregoing reasons, defendant respectfully requests that the Court limit DIRECTV's planned summary judgment motion on the surplus transfer issue to the legal question described above, and adopt the discovery and briefing schedule set forth above. In the alternative, if the Court intends that discovery be completed upon all the issues in the case before DIRECTV files either of its summary judgment motions, defendant requests that the Court allow a period of not less than eight months within which to complete all discovery.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

OF COUNSEL:

LAWRENCE S. RABYNE
Trial Attorney
Defense Contract Management Agency
1523 West Central Road
Arlington Heights, Illinois 60005

Dated: January 7, 2008

s/ C. Coleman Bird
C. COLEMAN BIRD
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: 202.307.0453
Facsimile: 202.514.7965
E-Mail: Coleman.Bird@usdoj.gov

Attorneys for Defendant United States

**CERTIFICATE OF FILING**

I hereby certify that on the 7th day of January, 2008, a copy of the foregoing Defendant's Status Report was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ C. Coleman Bird